## STATEMENT OF FACTS

Your affiant is a Special Agent with the Federal Bureau of Investigations ("FBI") assigned to the FBI's Philadelphia Division, Fort Washington Resident Agency. In my duties as a special agent, I received training and have experience in the investigations of domestic terrorism violations and, among other things, have conducted or participated in surveillances, debriefings of informants, review of taped conversations and records, review of surveillance video footage, and the execution of search and tracking warrants. Currently, I am tasked with investigating criminal activity in and around the Capitol grounds on January 6, 2021. As an FBI Special Agent, I am authorized by law or by a Government agency to engage in or supervise the prevention, detection, investigation, or prosecution of a violation of Federal criminal laws.

By way of background, the U.S. Capitol is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol. On January 6, 2021, the exterior plaza of the U.S. Capitol was also closed to members of the public.

On January 6, 2021, a joint session of the United States Congress convened at the Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President Mike Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades were in place around the exterior of the Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, around 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

Shortly thereafter, at approximately 2:20 p.m., members of the House of Representatives and Senate, including the President of the Senate, Vice President Mike Pence, were instructed to— and did—evacuate the chambers. Accordingly, the joint session of the Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

Video footage captured by Body Worn Cameras (BWC) of law enforcement officers of the Washington, D.C. Metro Police Department (MPD) on January 6, 2021 depicted evidence of violations of local and federal law. Several of these BWC's videos taken by MPD officers at the Capitol grounds, as well as video taken by other rioters and later made publicly available, showed a man wearing a black and blue pullover wind breaker with the words "Brigantine Beach" on the upper left chest, red baseball cap, khaki pants, and one black glove, later identified as HOWARD CHARLES RICHARDSON of King of Prussia, Pennsylvania, standing in a crowd near a line of MPD officers on the west plaza, as shown in Figure 1. RICHARDSON was at times waving a blue and white Trump flag attached to a metal pole. At approximately 1:38 p.m., video from several officers' BWC shows RICHARDSON assault an MPD officer with the flagpole.



*Figure 1*

After reviewing video images from January 6, the FBI determined that the individual seen in this footage matched the known likeness of RICHARDSON, as shown in a 2020 arrest booking photo in Figure 2, below. RICHARDSON was also known to an Upper Merion Township Police Department (UMPD) Traffic Safety Officer. In September 2021, RICHARDSON was alleged to have assaulted an individual riding a motorcycle outside of RICHARDSON's residence; this UMPD Officer spoke with RICHARDSON on the day of that assault. An FBI Task Force Officer showed the UMPD officer BWC video from January 6, 2021, and the officer identified the individual wielding the flagpole in the video as RICHARDSON.


*Figure 2*

According to UMPD records, in June 2020, RICHARDSON informed UMPD officers that his cell phone number was XXX-XXX-1068. Telephone provider records received pursuant to a lawfully obtained search warrant revealed that the mobile device associated with that number traveled south from Pennsylvania towards Washington D.C. on the morning of January 6, 2021, using a route that was consistent with Interstate 95 Southbound. These records revealed RICHARDSON's cell phone communicated on January 6, 2021 with multiple cell sites that were located within 1.28 miles of the United States Capitol and its surrounding grounds, including a cell site consistent with providing service to the United States Capitol building and its surrounding grounds. The records did not show any activity between approximately 10:30 a.m. and 6:30 p.m., which in my experience is consistent with the phone being powered off. (RICHARDSON later told FBI agents, in an interview described below, that his cell phone battery died shortly after he arrived in D.C. that morning, and was powered off until the evening when he had the opportunity to recharge the battery.)

At approximately 1:38 p.m. on January 6, 2021, BWCs worn by at least four MPD officers deployed to protect the Capitol, video-recorded RICHARDSON, unprovoked by the officers, take a metal flagpole with a blue Trump flag attached and strike MPD Officer R.N. three times. RICHARDSON approached R.N. across the bicycle rack-style barricades designed to prevent unauthorized access to the U.S. Capitol building and Capitol grounds. In the video, RICHARDSON can be heard yelling "here it comes" before swiftly approaching the officer's position and striking three times, as shown in Figures 3 and 4 (taken from the BWC of a nearby officer).



Figure 3



Figure 4

RICHARDSON only stopped swinging after the flagpole broke in his hands, as shown in Figure 5 (taken from the BWC of the same nearby officer).



*Figure 5*

MPD Officer R.N. was on duty at the U.S. Capitol January 6, 2021. In an interview with the FBI, Officer R.N. advised that in the chaos of the day, he lost his BWC. Officer R.N. had been wearing his riot gear, consisting of the MPD helmet and jacket. He had been assigned to protect the U.S. Capitol from rioters entering the U.S. Capitol. R.N. remembered RICHARDSON, who he described as an older white male from the BWC video, holding a flag, and recalled being struck with a flagpole several times while in the vicinity of the Capitol where this BWC footage was taken. As a result of the chaos that day, R.N. could not specifically state whether RICHARDSON was the person who struck him.

RICHARDSON was arrested on October 25, 2021, for the unrelated assault charges that took place outside his residence in September 2021, described above. RICHARDSON was advised of and waived his *Miranda* rights, and agreed to be interviewed by FBI agents regarding his activities on January 6, 2021. The interview was audio and video recorded. In summary, RICHARDSON acknowledged that he drove to D.C. on the morning of January 6 to attend the "Stop the Steal" rally. He arrived too late to see Trump speak at the rally, and made his way over to the U.S. Capitol. He watched others knock over the bicycle rack barriers and saw the line of MPD officers retreat, and joined a large crowd to breech the security barriers and make his way closer to the Capitol. RICHARDSON described that he was close to a group of rioters that tried to ram a large object into the police line, and as a result he was hit with tear gas and retreated. After a rioter gave RICHARDSON milk to treat the burning in his eyes, he recovered, and, according to RICHARDSON, he went back to the front near the police line.

RICHARDSON admitted he swung his flagpole at a police officer shortly after he recovered from the pepper spray and returned to the line. But he falsely claimed that he swung at the officer only after the officer swung a piece of metal at him. RICHARDSON described his assault on the officer as simply a natural response to being swung at. During the interview, FBI agents showed RICHARDSON the video of his assault, which shows that RICHARDSON was not, in fact, provoked when he assaulted R.N. RICHARDSON acknowledged it was him in the

video. He maintained, however, that he acted in response to something coming at him. When pressed about the perspective of the police officers, RICHARDSON admitted, "I'm not saying this is the best behavior I could have done here." But he also claimed that he was provoked by others who infiltrated the crowd.

On October 25, 2021, agents executed a search warrant, issued in the Eastern District of Pennsylvania, for RICHARDSON's residence and person. During the search, agents located two red hats and a black and blue windbreaker with a "Brigantine Beach" logo on the upper left chest, which matches the jacket RICHARDSON is seen wearing in Figures 3, 4, and 5. Agents also found a day planner that RICHARDSON acknowledged was his. As shown in Figure 6, RICHARDSON wrote that he parked at 11:00 a.m., was at the front of the Capitol building at 12:15 p.m., "gates were breeched" at 1:00 p.m., "moving up to steps" at 1:30-1:45 p.m., and "got pepper sprayed" at 2:00 p.m. He noted that he "started to leave" the Capitol at 3:30 p.m. (U.S. Capitol surveillance footage in fact shows RICHARDSON, identified by the same blue windbreaker and khaki pants, walking away from the Capitol building at approximately 3:10 p.m. on January 6.)



*Figure 6*

The search also revealed information on RICHARDSON's cell phone confirming his attendance at the riot. In text messages with an acquaintance, RICHARDSON discussed travel arrangements and made plans to attend the Stop the Steal rally and stay together at the Hyatt hotel in Washington D.C. Further, on January 3, 2021, just days before the riot, RICHARDSON texted a picture of himself with three flags, one of which is a blue Trump flag very similar to the flag attached to the metal pole RICHARDSON used to assault MPD Officer R.N., shown in Figure 7.



*Figure 7*

Based on the foregoing, your affiant submits that there is probable cause to believe that RICHARDSON violated 18 U.S.C. § 111(a) and (b), which makes it a crime to, assault, resist, oppose, impede, intimidate, or interfere a Federal law enforcement officer, as designated in Section 1114 of Title 18, while engaged in or on account of the performance of official duties, or on account of those duties. Section 1114 specifically lists USCP officers as Federal law enforcement officers. This definition under Section 1114 is further extended to any person assisting such a federal officer or employee in the performance of his or her duties or on account of that assistance. USCP officers are Federal law enforcement officers, and MPD officers were assisting them in protecting the Capitol and the Members of Congress on January 6, 2021.

Your affiant submits there is also probable cause to believe that RICHARDSON violated 18 U.S.C. § 231(a)(3), which makes it unlawful to commit or attempt to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function. For purposes of Section 231 of Title 18, a federally protected function means any function, operation, or action carried out, under the laws of the United States, by any department, agency, or instrumentality of the United States or by an officer or employee thereof. This includes the Joint Session of Congress where the Senate and House count Electoral College votes.

Your affiant submits further that there is probable cause to believe that RICHARDSON violated 18 U.S.C. § 1752(a)(1), (2), and (4), which makes it a crime to (1) knowingly enter or remain in any restricted building or grounds without lawful authority to do; and (2) knowingly,

and with intent to impede or disrupt the orderly conduct of Government business or official functions, engage in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions; (4) knowingly engages in any act of physical violence against any person or property in any restricted building or grounds; or attempts or conspires to do so. For purposes of Section 1752 of Title 18, a "restricted building" includes a posted, cordoned off, or otherwise restricted area of a building or grounds where the President or other person protected by the Secret Service, including the Vice President, is or will be temporarily visiting; or any building or grounds so restricted in conjunction with an event designated as a special event of national significance.

Your affiant submits there is also probable cause to believe that RICHARDSON violated 40 U.S.C. § 5104(e)(2)(D), (F), and (G), which makes it a crime to willfully and knowingly (D) utter loud, threatening, or abusive language, or engage in disorderly or disruptive conduct, at any place in the Grounds or in any of the Capitol Buildings with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress, or the orderly conduct in that building of a hearing before, or any deliberations of, a committee of Congress or either House of Congress; (F) engage in an act of physical violence in the Grounds or any of the Capitol Buildings; and (G) parade, demonstrate, or picket in any of the Capitol Buildings.

Lorelei Rae Schreier
Special Agent, FBI

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone, November 22, 2021.

HON. ZIA M. FARUQUI
U.S. MAGISTRATE JUDGE

9