# EXHIBIT 6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 21-MJ-01805 |
| | ) | |
| vs. | ) | |
| | ) | |
| HOWARD RICHARDSON, | ) | Philadelphia, PA |
| | ) | December 3, 2021 |
| Defendant. | ) | 12:25 p.m. |

TRANSCRIPT OF DETENTION HEARING/REMOVAL
BEFORE THE HONORABLE TIMOTHY R. RICE
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Government: JOSH A. DAVISON, ESQUIRE
ASSISTANT UNITED STATES ATTORNEY
UNITED STATES ATTORNEY'S OFFICE
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106

For the Defendant: THOMAS C. EGAN, III, ESQUIRE
621 Swede Street
Norristown, PA 19401

Audio Operator: INNA GOLDSHTEYN

Transcribed by: DIANA DOMAN TRANSCRIBING
[redacted]
Office: ( ) [redacted]
Fax: ( ) [redacted]
Email: [redacted]

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

I N D E X

| THE COURT: | PAGE |
|---|---|
| Enters finding on identification of defendant | 4 |
| | |
| ARGUMENT RE: DETENTION: | PAGE |
| Mr. Davison | 5 |
| Mr. Egan | 9 |
| | |
| THE COURT: | PAGE |
| Decision | 12 |

(The following was heard via Zoom at 12:25 p.m.)

THE COURT: Mr. Egan, we have your client here; are you ready to proceed?

OFFICER: Let me go get Richardson.

THE COURT: Thank you, Officer.

OFFICER: You're welcome.

THE COURT: All right. Mr. Richardson, we have Mr. Egan on. Can you hear us, Mr. Egan? I can see him, but we don't have any audio.

Mr. Egan, you have your mic off.

(Pause)

THE COURT: Mr. Egan, can you hear me? Give me a thumbs up if you can.

THE CLERK: Your Honor, I just sent him a message to unmute himself.

THE COURT: Yeah, there he is. Mr. Egan, can you hear us now?

(Pause)

THE COURT: I don't think he can hear us.

THE CLERK: I'll send him a message.

THE COURT: Yeah. Maybe he can call in by phone.

MR. EGAN: Judge, I'm sorry. This is Tom Egan. Were you trying to speak to me? I have your voice --

THE COURT: Yes. All right. I just wanted to make sure -- I just wanted to make sure you can hear me. Can you

hear me okay?

MR. EGAN: I can now, yes. I had to do something different on my car because I'm plugged into the cord, otherwise my phone's gonna run out. I've been on other videos and guilty pleas this morning. So, my apologies.

THE COURT: Oh, sure. No problem at all. I have Mr. Richardson here.

Mr. Richardson, do I have your agreement to proceed by video today in light of the national pandemic?

THE DEFENDANT: Yes.

THE COURT: All right. Mr. Richardson is here because there's been a warrant issued for his arrest out of the District of Columbia, so he's entitled to a hearing on identity and also a hearing on bail. And he also has the right, if he wants, to try to work out a plea agreement and plead guilty in this district, if the District of Columbia will allow that.

But how do you want to proceed, Mr. Egan?

MR. EGAN: Judge, we're ready to -- we're not agreeing to detention and I have provided documentation to Magistrate Lloret's office indicating we agree with identification.

THE COURT: All right. So I'm going to enter a finding, Mr. Richardson, that you are the same person named in the warrant from the District of Columbia and I'll make

that finding.

Mr. Davison, -- there he is -- what's your position on bail?

MR. DAVISON: The Government is seeking detention in this matter, Your Honor.

THE COURT: Okay. Why don't you explain why.

MR. DAVISON: Yes, Your Honor. Thank you. With regard to the charged offense in this case, the defendant is charged with assaulting a federal officer and related charge -- and related charges related to his participation in the riot at the Capitol on January 6th.

The evidence shows us that he drove to the rally and arrived somewhere around 1:40 p.m. And when the outer border was breached, namely those bicycle metal barricades, that he proceeded up the Capitol and eventually proceeded to be near men who were trying to ram a certain sign -- signage which was based in metal and ram Capitol officers.

He was pepper sprayed at that point, but he was undeterred. Instead of retreating, he grabbed a metal flagpole and repeatedly, three times, swung it at Capitol officers, and by all accounts of the video, it looks like he made contact with officers.

This is all captured on video and the Government has submitted it and attached it as Exhibit 1 to its motion.

Even after that, he swung with such force that the

flagpole actually broke in his hands. And we know he continued to be at the Capitol for some -- for some time after that and appears by -- by video evidence that he was there for approximately an hour and a half.

The evidence of the crimes that he committed on the campus of the Capitol, the evidence is overwhelming. There's body camera images, video evidence from other sources, and Richardson's own statements.

These offenses alone carry serious incarceratory sentences and his guidelines are calculated preliminarily at 41 to 51 months, inasmuch as he used a dangerous weapon to attack federal officers.

What is perhaps just as concerning is his recent behavior. Going back to July 2018, there is a Philadelphia Police Department report, again attached to this motion, where the defendant was involved in an incident at a gas station in which apparently the parties were jockeying for a certain gas pump.

Well, in response to this conflict, the defendant lifted up his shirt and displayed his firearm to the other parties. Then, because in his words he said he felt threatened, he actually pointed the gun at two witnesses on the scene. He was not charged in this incident; however, his license to carry a firearm as a result of this incident was revoked.

Again in October -- again, he was not charged in that case. October of 2020, fast forwarding a bit, he was pulled over by East Norriton police in Montgomery County for an expired registration. He was asked specifically by the police officer, are you carrying any weapons? At first he said, no. Later in the interaction the police officer asked again, sensing something, said, are you carrying, sir? And then he admitted that he was carrying a concealed firearm on his hip. Again, he was charged in this incident because, of course, at this point he did not have a license to carry a firearm.

In the interim, there are the January 6th riots and I relayed his participation in that matter. Fast forward to September 2021, okay -- and that October 2020 case is still pending. September 2021, Richardson is apparently involved in some kind of beef with his neighbor in King of Prussia. Apparently, his concern is that his neighbor is riding his motorcycle too fast down the street.

So on one day in September, Richardson sees him riding his motorcycle at normal pace. He darts out and from the back shoulders yanks him off his motorcycle causing serious injury and resulting in a charge of aggravated assault against Richardson. This is -- this incident was witnessed by neighbors and captured on a Ring camera, and frankly it's a horrifying video to see someone pulled off and

instantly recognize that they are -- are seriously injured. That case is currently pending in Montgomery County.

Despite all this concerning history, given the fact that the defendant surrendered in this matter, the Government considered the idea of home detention and in fact sent proposed conditions over to defendant's counsel. Once the defendant surrendered, he eventually met with Pretrial.

At his meeting with the Pretrial officer, he indicated that he had no arrest history. In fact, in one of the -- at least in one of those cases there's an FBI agent who witnessed the fact that he was placed in cuffs, in handcuffs after being served with an arrest warrant.

He also falsely denied that he had any open criminal cases. He also gave conflicting information regarding having a passport. And finally when asked if he had any firearms, he flatly refused to answer that question.

So what the defen -- the Government understands that the defendant is 71 years old, has no criminal convictions, and for those reasons considered home detention. But for all that transpired with Pretrial, it gives the Government obviously more concern than it already had about him and leaves little doubt that the defendant is a good candidate to be on home detention. Why? Because he can't follow instructions; he can't be trusted, and his behavior is extremely volatile and represents a danger to the community.

In each one of the incidences that the Government has just described, Richardson has taken a view and given statements to the authorities that he has been the victim in each one of these offenses, including the Capitol riots in which he believes that the Capitol officers were coming after him, even though that is flatly rejected by a viewing of the video.

He confirms that -- he also states in each one of these incidences that he was threatened by someone. With the motorcycle incident, he indicated that he went down to the street to confront this person and the motorcyclist clipped him. A viewing of that video shows quite the opposite.

So --

THE COURT: Okay. All right. I understand. Thank you. Mr. Egan?

MR. EGAN: Judge, thank you very much, and I hope I didn't hold you up too much.

THE COURT: Not at all.

MR. EGAN: Judge, Mr. Richardson's a 71-year-old man with no prior history of convictions whatsoever. He's pretty much a lifelong resident of the Commonwealth of Pennsylvania. He's been over 40 years in the Eastern District of Pennsylvania. He's lived with the same woman for a couple decades at this point who is a long, longtime girlfriend. He has a steady address in King of Prussia.

He's always been gainfully employed. He runs his own business. He -- he has done everything that you would expect somebody to do, at least through the age of 70, until these issues have arose.

I understand the way some of these issues look, but when -- if I roll back the time to Monday of this past week when I was contacted by law enforcement officials to surrender Mr. Richardson, I immediately got in touch with him and he expressed no hesitation but to surrender and we worked out the when and the how.

He was coming back from the Pocono's and he turned himself in on Tuesday morning, 8:30, quarter of nine in the morning, followed my instructions to the T. I wasn't there because I don't get to go back with the marshals and into the FBI processing, but he followed everything he was supposed to do.

Then after he was processed, he went to the marshals. Now, mind you, when I had him surrender and he followed my advice, we had an agreement worked out. Notwithstanding the different incidents that have been outlaid by the Government in this case, they were agreeable to a 100,000 OR bond with constraints that would be placed upon Mr. Richardson, and the only disconnect that happened was this 71-year-old man did not adequately understand the questions with regard to prior criminal history.

As he understood it, when he was asked whether he had a prior criminal history, he did answer no because he hasn't, in his words, been convicted of anything and he's never been on probation; he hasn't spent any time in jail.

And with regard to the firearms, again, he knew that he was surrendering the firearms. That had been discussed with me. I had discussed it with the Government. And when he was refusing to answer it was because he already knew he was giving them up because they were giving them up. They were part of him turning himself in.

So really nothing has changed other than a 71-year-old man misunderstanding or misinterpretations of some of the questions that were being posed to him, notwithstanding the activities that were outlined by the Government in this case.

So if we're worried about a flight risk, he certainly is none. He's a lifelong resident for basically the -- in the Commonwealth of Pennsylvania. He has no prior convictions. He's never been on probation. He's never been a failure to appear.

He did appear as instructed by me when and how he was supposed to do so. And up until he had some disconnect with the Pretrial Services, the Government was okay with an OR bond. And now here we are on Friday, four days later or three days after he's been incarcerated, and I suggest the terms and conditions of that OR bond still would be able to

be met by Mr. Richardson. They're appropriate in this case for his detention and confinement and we're asking that you impose those. And they would be the normal conditions of house arrest; they would be the normal condition of surrendering a passport, which he does not have.

I have already made arrangements with his girlfriend, that she would surrender her two handguns that she lawfully possesses in the home. I've talked to her every day since he's been locked up and she has no problem signing them over to whomever the Government would like.

So you have a man that lives here, works here, has no convictions, and can be followed on whatever monitoring Pretrial Services does, so they know if he's leaving, they know where he's going, and they can make sure that everything is okay. The risk to the public once those constraints are placed upon Mr. Richardson are negligible, I suggest to the Court.

THE COURT: All right. Thank you, Mr. Egan. I do agree with you that I don't believe Mr. Richardson's a risk of flight given his community ties, but I disagree on danger to the community.

Based on the evidence proffered by the Government, it's astounding to me that anyone would even consider releasing him on house arrest, given his propensity for violent behavior stemming from the gas station incident, the

assault on the motorcycle operator, and his attack on Capitol police officers, which is one of the most blatant acts of violence I've seen in recent memory. And then to depict himself as a victim, that the police were assaulting him when he was disrupting a session of the United States Congress, is the ultimate act of violence in my view.

So I find by clear and convincing evidence that no condition or combination of conditions would reasonably assure the safety of the community, and I'm going to require him to be held without bail pending further proceedings in the District of Columbia. So he'll be transported to the District of Columbia by the United States Marshall Service.

MR. EGAN: Understood, Judge.

THE COURT: Thank you, Mr. Egan.

Mr. Davison, any questions?

MR. DAVISON: No, Your Honor. Thank you.

THE COURT: All right. I also want to apprise --

MR. EGAN: Thank you.

THE COURT: Hold on, Mr. Egan. I also have to --

MR. EGAN: I'm sorry.

THE COURT: -- apprise Mr. Richardson that the United States is obligated to timely disclose Brady information and its failure to comply with those obligations may result in consequences such as exclusion of the evidence, dismissal of the charges, contempt proceedings, disciplinary

referral, and any other relief authorized by law.

Anybody have any questions on that?

MR. EGAN: No, Your Honor.

MR. DAVISON: No, Your Honor. Understood.

THE COURT: All right. Thank you.

MR. DAVISON: Have a good day.

(Proceedings concluded at 12:41 p.m.)

* * * * *

C E R T I F I C A T I O N

I, Roxanne Galanti, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

/s/Roxanne Galanti January 17, 2022

ROXANNE GALANTI

DIANA DOMAN TRANSCRIBING, LLC