**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA

v.

HOWARD CHARLES RICHARDSON,

Defendant

Criminal Action No. 21-721 (CKK)

**MEMORANDUM OPINION**
(January 27, 2022)

Defendant Howard Charles Richardson is charged by indictment with seven felony and misdemeanor offenses arising from his participation in the events at the United States Capitol on January 6, 2021.  The Government moved for Defendant Richardson to be detained pending trial. Magistrate Judge Timothy P. Rice of the United States District Court for the Eastern District of Pennsylvania held a detention hearing and concluded that pretrial detention was warranted.

Pending before the Court is Defendant Richardson's [16] Motion for Bail, in which he asks the Court to revoke the magistrate judge's detention order and place him on pretrial release with conditions.  Upon careful consideration of the pleadings,[1] the relevant legal authority, and the record before the Court, the Court shall **DENY** Defendant Richardson's motion.

**I.    BACKGROUND**

Defendant Richardson is charged by Indictment with seven felony and misdemeanor counts: (1) Civil Disorder, in violation of 18 U.S.C. § 231(a)(3); (2) Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon, in violation of 18 U.S.C. §§ 111(a)(1) and

---

[1] The Court's consideration has focused on: Defendant's Motion for Bail Pursuant to 18 U.S.C. § 3142 ("Def.'s Mot."), ECF No. 16; and United States' Opposition to Defendant's Motion for Bail ("Gov.'s Opp'n"), ECF No. 17.  Defendant Richardson's counsel notified the Court on January 24, 2022 that Defendant declined to file a reply in support of his motion for bail.

(b); (3) Entering and Remaining in a Restricted Building or Ground with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §§ 1752(a)(1) and (b)(1)(A); (4) Disorderly and Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §§ 1752(a)(2) and (b)(1)(A); (5) Engaging in Physical Violence in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §§ 1752(a)(4) and (b)(1)(A); (6) Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D); and (7) Act of Physical Violence in the Capitol Grounds or Building, in violation of 40 U.S.C. § 5104(e)(2)(F).  Indictment, ECF No. 6.

The facts discussed here are based upon the record presently before the Court, including the parties' pleadings and associated exhibits, the photographic and video evidence presented by the Government, and the [1-1] Statement of Facts in support of the [1] Criminal Complaint.  In an exercise of its discretion, the Court declines to hear additional evidence.  *See United States v. Sheffield*, 799 F. Supp. 2d 18, 29 (D.D.C. 2011) ("The Court is free to use in its analysis any evidence or reasons relied on by the magistrate judge, but it may also hear additional evidence and rely on its own reasons." (internal citations and quotation marks omitted)).  The facts stated here do not represent the Court's findings of fact on the merits of the case, which are the province of the jury.

### A.  Defendant's Participation in the Capitol Riot on January 6, 2021

On January 6, 2021, a joint session of the United States Congress convened to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020.  *See* Compl., Stmt. of Facts ("SOF") at 1, ECF No. 1-1.  The joint session began at approximately 1:00 p.m., with then-Vice President Michael R. Pence presiding.  *Id.*  By 1:30 p.m., the United States House of Representatives and the United States Senate adjourned to

separate chambers within the Capitol to resolve an objection raised in the joint session. *Id.* Vice President Pence continued to preside in the Senate chamber. *Id.* As the House and Senate proceedings took place, a large crowd of protesters gathered outside the Capitol. *Id.* "[T]emporary and permanent barricades were in place around the exterior of the . . . building, and United States Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside." *Id.*

Shortly after 2:00 p.m., "individuals in the crowd forced entry into the Capitol building, including by breaking windows and by assaulting members of the Capitol Police, as others in the crowd encouraged and assisted those acts." *Id.* These violent acts caused members of the Senate and House of Representatives to evacuate the chambers of the Capitol and suspend the certification process of the presidential election results. *Id.*

Defendant Richardson drove from Pennsylvania to Washington, D.C. on the morning of January 6, 2021 to attend then-President Donald J. Trump's speech near the White House. Gov.'s Opp'n at 2. He joined a crowd moving towards the Capitol. *Id.* There, he observed metal barriers and police officers attempting to keep the crowd away from the building. *Id.*

With its Opposition to Defendant Richardson's motion for bail, the Government has provided a body-worn camera video from approximately 1:40 p.m., showing Defendant Richardson near a line of police officers, who were standing behind a metal barricade, guarding the Capitol. *See* Gov.'s Opp'n Ex. 1, FBI Investigation Agent Schreier-BWC of Naticchione.mp4 video ("BWC"). The video shows members of the crowd yelling at police officers and pushing towards the metal barricades behind which the police were standing. *Id.* at 13:38:30–33. It appears that an officer deployed pepper spray in an effort to push back aggressive crowd members. *Id.* at 13:38:33–35.

Defendant Richardson, wearing a blue windbreaker and a red baseball cap, then emerges from behind a woman in the crowd—several feet away from the police line—holding a flagpole. *Id.* at 13:38:37–40.  He raises the flagpole and forcefully swings it downward, striking a police officer standing behind the metal barricade.  *Id.* at 13:38:38–39.  The flagpole makes contact with the officer's arm; the officer's arm was outstretched over the barricade, and it was pushed downward by the force of the blow.  *Id.*  In response, the officer swings a baton over the metal barricade in Defendant Richardson's direction, but the baton is several feet shy of where Defendant Richardson is standing, and does not make contact with him.  *Id.* at 13:38:38–40.  Defendant Richardson then raises the flagpole again, and forcefully swings it downward, again striking the police officer.  *Id.* at 13:38:39–40.  He then strikes the police officer with the flagpole for a third time, using enough force to break the pole.  *Id.* at 13:38:40–43.  It appears that Defendant Richardson only retreated from the line of police officers when someone deployed pepper spray or tear gas, as he backs away attempting to shield his eyes.  *Id.* at 13:38:42–50.  He did not leave the Capitol grounds until approximately 3:10 p.m.  Gov.'s Opp'n at 7.

In his Motion for Bail, Defendant Richardson claims that he only hit the metal barrier with his flagpole, but that "[i]t appears no officer was struck."   Def.'s Mot. ¶¶ 4–5.  The BWC video contradicts this assertion.  Moreover, Metropolitan Police Department ("MPD) Officer R.N. later recalled being struck with a flagpole several times.  *See* Gov.'s Opp'n at 6.

Following an arrest in an unrelated assault case,[2] Defendant Richardson was interviewed by FBI agents on October 25, 2021 and asked about his participation in the events at the Capitol on January 6, 2021.[3]  Defendant Richardson admitted that he walked through a broken barrier onto

---

[2] The unrelated assault case is described *infra* Section I(C).

[3] The Government indicates that the FBI agents read Defendant Richardson his *Miranda* rights, which he agreed to waive.  Gov.'s Opp'n at 7.  The Government also explains that the interview

restricted grounds outside the Capitol.  Gov.'s Opp'n at 8.  He also admitted that he swung his flagpole at a police officer, but claimed that he only did so because the officer swung at him first, suggesting that his assault was in response to the officer's aggression.  *Id.*  As the Government correctly notes, the BWC video provided to the Court does *not* support this claim; there is no indication that any police officer hit Defendant Richardson before he began to use his flagpole to strike the officer, nor is there any indication that Defendant Richardson was "hit" at all by any police officer during this confrontation.  *Id.*  The FBI agents, noting this discrepancy, showed Defendant Richardson the BWC video.  *Id.*  Even after watching the video, Defendant Richardson "continued to insist that he was striking back" in response to being hit first.  *Id.*  He also claimed that the crowd had been "infiltrated" by people attempting to stir agitation.  *Id.*

The FBI agents asked Defendant Richardson what he thought of his conduct on January 6, 2021, noting that his son is a police officer.  *Id.* at 8.  Defendant Richardson conceded that he may have been caught up in a mob mentality, but also stated, "I don't look at someone like a police officer when he's trying to hit me."  *Id.*

### B.  Defendant's Arrest, Pretrial Services Interview, and Detention Hearing

On November 22, 2021, a Criminal Complaint was filed in this case and a warrant issued for Defendant Richardson's arrest.  Federal law enforcement officers intended to execute the arrest warrant on November 29, 2021, but learned that Defendant Richardson had not returned home from out-of-town travel.  Gov.'s Opp'n at 12.  The Government's counsel contacted Defendant Richardson's counsel to inform him of the arrest warrant, and according to the Government, "it was agreed that Richardson could self-surrender to the FBI the following morning in lieu of being

---

was recorded by audio and video, but there is no transcript available.  Its representations about this interview are based on "notes of a review of the video-recorded meeting." *Id.* at 8, n. 3.

arrested at his home or elsewhere." *Id*.  Defendant Richardson reported to the FBI office in Philadelphia on November 30, 2021.  Def.'s Mot. ¶ 14.

The Government initially determined that it would recommend that Defendant Richardson be released with conditions pending trial.  Gov.'s Opp'n at 12.  The Government conveyed this preliminary decision to Defendant Richardson's counsel and provided a proposed release order. *See* Gov.'s Opp'n at 12; Def.'s Mot. Ex. 1.  Defendant Richardson apparently understood his agreement to self-surrender as an exchange for "$100,000.00 O/R bail with conditions," including surrender of all firearms in his possession.  Def.'s Mot. ¶¶ 12–13, 35.  The Government disputes this assertion, indicating that it "did not promise any concessions to Richardson's release or bail conditions in exchange for his agreement to surrender."  Gov.'s Opp'n. at 12.

The Government also indicates that it changed its decision to recommend pretrial release with conditions after it learned additional information about the circumstances surrounding the revocation of Defendant Richardson's permit to carry a concealed firearm, discussed *infra* Section I(C), as well as his responses when he was interviewed by a Pretrial Services Agency  ("PSA") officer in preparation for his initial appearance in this case.

During the interview by PSA, Defendant Richardson was asked if he had ever been arrested.  He falsely responded that he had never been arrested, and that he had no open cases against him.  Gov.'s Opp'n at 13; *see infra* Section I(C) (describing other arrests and pending cases against Defendant Richardson).  The PSA interviewer then reportedly clarified the question, asking if Defendant Richardson had been *arrested* even if he had not been convicted.  Gov.'s Opp'n at 13.  Defendant Richardson again stated that he had never been arrested.  *Id*.  In his present motion, Defendant Richardson admits that he has two recent arrests (described *infra* Section I(C)), but concedes that during the interview he denied being previously arrested, claiming that he

"mistakenly believed that he had never been 'arrested' because he was not convicted of any charges." Def.'s Mot. ¶¶ 20, 30, 31. The interviewing PSA officer reportedly informed Government counsel that "it was her impression that [Defendant] Richardson was not simply confused or mistaken." Gov.'s Opp'n at 13.

Defendant Richardson also "refused to discuss" with PSA his access to firearms. *Id.* Before executing a search warrant at Defendant Richardson's residence in October 2021, federal law enforcement agents had conducted a "records check" for known firearms, which identified only one firearm associated with the homeowner, "believed to be Defendant Richardson's girlfriend." *Id.* However, during the execution of the search warrant, federal agents located a second weapon for which they could not locate any record of sale. *Id.* at 14. The homeowner purportedly told the agents that it "was a recent purchase," but did not indicate who owned the firearm. *Id.* at 14. Defendant Richardson admits that he "would not answer" questions by PSA about "whether there were firearms present in his residence." Def.'s Mot. ¶¶ 19–20. He claims that he knew that "Federal authorities already knew that his long-time girlfriend legally possesses two (2) firearms" and that he was "concerned that he was infringing on his girlfriend's right to possess firearms and her ability to eventually get her firearms returned after the case was over[.]" *Id.* ¶¶ 34, 26.

According to the Government, after learning additional details about the circumstances surrounding Defendant Richardson's other criminal cases, as well as his "false and incomplete" answers during his PSA interview, it changed its earlier proposal to recommend pretrial release with conditions. The Government moved to detain Defendant Richardson pending trial pursuant to 18 U.S.C. § 3142.

A detention hearing was held before Magistrate Judge Timothy R. Rice of the U.S. District Court for the Eastern District Pennsylvania on December 3, 2021. *See* Gov.'s Opp'n Ex. 6, Hr'g Tr., ECF No. 17-5. No witnesses testified during the hearing. After hearing arguments from the Government and Defendant's counsel, Magistrate Judge Rice concluded that Defendant Richardson did not present a risk of flight, but stated:

> [I]t's astounding to me that anyone would even consider releasing him on house arrest, given his propensity for violent behavior stemming from the gas station incident, the assault on the motorcycle operator, and his attack on Capitol police officers, which is one of the most blatant acts of violence I've seen in recent memory. And then to depict himself as a victim, that the police were assaulting him when he was disrupting a session of the United States Congress, is the ultimate act of violence in my view.

Hr'g Tr. at 12:23–13:6. He concluded that the Government had demonstrated by clear and convincing evidence that no condition or combination of conditions would reasonably assure the safety of the community, and ordered that Defendant Richardson be detained pending trial. *Id.* at 13:7–12. In support of this conclusion, Magistrate Judge Rice cited, among other considerations, Defendant Richardson's "recent history of escalating violent behavior[,]" his "recent pattern of lying to law enforcement officers about his behavior[,]" and his "history of failing to abide by requirements restricting his possession and use of firearms." Gov.'s Opp'n Ex. 7, Pretrial Detention Order, ECF No. 17-6.

### C. Defendant's Other Alleged Criminal Conduct

In addition to describing Defendant Richardson's conduct at the Capitol on January 6, 2021, the Government provides information regarding three recent encounters with law enforcement. Because this information is pertinent to the Court's analysis of whether pretrial detention is appropriate, *see, e.g.*, *infra* Section III(C) (considering the "history and characteristics" of the defendant), the Court shall briefly summarize each event here. Because none of these

incidents have (to date) resulted in a criminal conviction, the Court's description of these incidents relies on police reports provided by the Government.  *See* Gov.'s Opp'n Exs. 2–5, ECF Nos. 17-1– 17-4.

First, on July 9, 2018, officers of the Philadelphia Police Department responded to a complaint of altercation at a gas station between Defendant Richardson and another individual. *See* Gov.'s Opp'n Ex. 2, 7/10/18 Police Report, ECF No. 17-1.  Defendant Richardson admitted to the responding officers that during the argument, he had lifted his shirt to show the other individual that he was carrying a concealed firearm.  *Id.*  He claimed that he displayed his firearm because he "felt threatened."  *Id.*  Defendant Richardson was not arrested as a result of this altercation, but his permit to carry a concealed firearm was revoked because he was determined to be a "person whose character/reputation indicates danger to public safety."  Gov.'s Opp'n at 9 (citing Gov.'s Opp'n Ex. 3, 10/10/20 Police Report, ECF No. 17-2).

Next, on October 10, 2020, Defendant Richardson was pulled over for driving with a suspended registration.  Gov.'s Opp'n at 9.  According to the police report of the traffic stop, the officer asked Defendant Richardson if he was carrying a firearm—to which he responded that he was not carrying a firearm and explained that his permit to carry had been revoked and his firearm confiscated.  Gov.'s Opp'n Ex. 4, 10/11/20 Police Report, ECF No. 17-3.  The officer again asked Defendant Richardson if he was armed.  This time, he responded that he had a loaded, concealed weapon on his right hip—and that he "always carries" a firearm.  *Id.*  Defendant Richardson was charged with carrying firearms and driving without a license. He was released on $5,000 unsecured bond. Gov.'s Opp'n at 10.  That case remains pending (and was pending against Defendant Richardson as of January 6, 2021).  *Id.*

Finally, on September 23, 2021, Defendant Richardson allegedly assaulted a motorcyclist outside his residence in Pennsylvania.  According to the Government, a video from a neighbor's Ring doorbell shows that Defendant Richardson stood in the middle of the street outside his home, in what appears to be an effort to block the motorcyclist.  Gov.'s Opp'n at 10.  The motorcyclist did not yield to him, and "the video appears to show Defendant Richardson knock the rider off his motorcycle."  *Id.*; *see also* Gov.'s Opp'n Ex. 5, 9/23/21 Police Report at 7, ECF No. 17-4 (describing the video showing Defendant Richardson attempting to "grab [the rider] off the motorcycle, causing him to "lose[ ] control and crash[ ]" into Defendant Richardson's truck and to "separate from the motorcycle and go over the hood of the truck").  According to the Government, the "victim rider can be heard in the surveillance footage screaming out in pain."  Gov.'s Opp'n at 11.  The motorcyclist suffered injuries requiring stitches to his left eyebrow area and surgery on his right leg.  *See* 9/23/21 Police Report at 7.

According to the motorcyclist, Defendant Richardson "tackled" him off his motorcycle and then began yelling at him.  *See id.* at 6.  The victim's brother came to the scene, waving a "metal spike" at Defendant Richardson, but reported to police that he dropped the spike when Defendant Richardson brandished a gun.  *See id.*  A neighbor reported seeing Defendant Richardson brandish a knife (not a gun) at the victim's brother.  *See id.* at 5.

Defendant Richardson offered a different account of events to police officers; he stated that he had signaled to the motorcyclist to slow down.  *See id.* at 6.  The motorcyclist did not slow down, and Defendant Richardson thought he was going to run him over.  *Id.*  He claims that he was "clipped" by the right hand/mirror of the motorcycle, which caused the rider to crash.  *Id.*  He denied brandishing any weapon.  *Id.*

Defendant Richardson was charged with aggravated assault as a result of this incident and was arrested on October 25, 2021. Gov.'s Opp'n at 11. He remained in custody until his first court appearance, but was then released on conditions and $5,000 unsecured bail. *Id.* at 12. That case remains pending. *Id.*

## II.    LEGAL STANDARD

A defendant ordered detained by a magistrate judge may file "a motion for revocation or amendment to the order" with "the court having original jurisdiction over the offense." 18 U.S.C. § 3145(b). Although the United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") has not ruled on the matter, every circuit to consider the issue has found that a magistrate judge's detention order is subject to *de novo* review. *See United States v. Hunt*, 240 F. Supp. 3d 128, 132 (D.D.C. 2017) (identifying cases supporting this proposition from the Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits). The district court is "free to use in its analysis any evidence or reasons relied on by the magistrate judge, but it may also hear additional evidence and rely on its own reasons." *Sheffield*, 799 F. Supp. 2d at 20 (quoting *United States v. Hanson*, 613 F. Supp. 2d 85, 88 (D.D.C. 2009)).

The Bail Reform Act permits pretrial detention in only "carefully defined circumstances." *United States v. Simpkins*, 826 F.2d 94, 95–96 (D.C. Cir. 1987). A detention hearing must be held only if a case involves any of an enumerated set of offenses, including a crime of violence or a felony that involves the use of a dangerous weapon, § 3142(f)(1), or if the defendant poses a serious risk of flight or of trying to obstruct justice or threaten, injure, or intimidate a witness or juror, *id.* § 3142(f)(2)(A)–(B).

The question for the Court is whether any "condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and

the community."  18 U.S.C. § 3142(e).  "In common parlance, the relevant inquiry is whether the defendant is a 'flight risk' or a 'danger to the community.'" *United States v. Vasquez-Benitez*, 919 F.3d 546, 550 (D.C. Cir. 2019).  In determining whether a defendant should be detained pending trial, the Court must consider "the available information" concerning four enumerated factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. § 3142(g).

"To justify detention on the basis of dangerousness, the government must prove by 'clear and convincing evidence' that 'no condition or combination of conditions will reasonably assure the safety of any other person and the community.'"  *United States v. Munchel*, 991 F.3d 1273, 1279–80 (D.C. Cir. 2021) (quoting § 3142(f)).  That standard requires the Government to establish that the defendant "poses a concrete, prospective threat to public safety" that cannot be sufficiently mitigated by release conditions.  *Id.* at 1280; *see also United States v. Salerno*, 481 U.S. 739, 751 (1987) (requiring the government to "prove[ ] by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community").  "Detention cannot be based on a finding that defendant is unlikely to comply with conditions of release absent the requisite finding of dangerousness or risk of flight; otherwise the scope of detention would extend beyond the limits set by Congress."  *Munchel*, 991 F.3d at 1283.

### III.  DISCUSSION

Defendant Richardson does not dispute that he is eligible for pretrial detention pursuant to § 3142(f)(1)(A) for having been indicted for a "crime of violence," specifically for assaulting, resisting, or impeding certain officers using a dangerous weapon, in violation of 18 U.S.C.

§§ 111(a)(1) and (b) (Count Two).  *See United States v. Sabol*, Crim. Action No. 21-35-1 (EGS), 2021 WL 1405945, at *6–7 (D.D.C. Apr. 14, 2021) (holding that a defendant charged with a violation of 18 U.S.C. §§ 111(a)(1) and (b) is charged with a crime of violence); *United States v. Klein*, Crim. No. 21-236 (JDB), 2021 WL 1377128, at *6 (D.D.C. Apr. 12, 2021) ("The D.C. Circuit has not weighed in, but every circuit to address the issue has . . . conclude[ed] that § 111(b) does constitute a crime of violence." (internal citations omitted)).[4]

Accordingly, the Court's inquiry is whether any "condition or combination of conditions will reasonably assure the appearance of [Defendant Richardson] as required and the safety of any other person and the community." § 3142(e)(1).  With respect to the danger Defendant Richardson presents to the community, the Court must "identify an articulable threat posed by [him]," based upon a "factbound inquiry" including the "context" of the charged offenses.  *Sabol*, 2021 WL1405945, at *7 (citing *Munchel*, 991 F.3d at 1283) (additional citations and quotation marks omitted).  In determining whether Defendant Richardson is a danger to the community, the Court considers the 18 U.S.C. § 3142(g) factors including: (1) "the nature and circumstances of the offense charged"; (2) "the weight of the evidence"; (3) "the history and characteristics" of the defendant; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release." § 3142(g).

---

[4] In addition, under § 3142(f)(1)(E), detention is permitted if a case involves "any felony . . . that involves the possession or use of a dangerous weapon."  *Munchel*, 991 F.3d at 1281 (quoting § 3142(f)(1)(E)).  Three additional charges in the Indictment appear to meet this description: Count Three (entering and remaining in a restricted building or grounds with a deadly or dangerous weapon, in violation of 18 U.S.C. § 1752(a)(1) and (b)(1)(A)), Count Four (disorderly and disruptive conduct in a restricted building or grounds with a deadly or dangerous weapon, in violation of 18 U.S.C. § 1752(a)(2) and (b)(1)(A)), and Count Five (engaging in physical violence in a restricted building or grounds with a deadly or dangerous weapon, in violation of 18 U.S.C. § 1752(a)(4) and (b)(1)(A)).  Indictment at 2–3; *see e.g.*, *Munchel*, 991 F.3d at 1281 (concluding that defendants charged under §§ 1752(a)(1) and (a)(2) for offenses involving a "deadly or dangerous weapon" are eligible for pretrial detention under § 3142(f)(1)(E)).

The Court shall consider these factors based upon the present record without holding an additional hearing, which neither party requested. *See Sheffield*, 799 F. Supp. 2d at 20 (permitting district court to use in its analysis the evidence relied on by the magistrate judge); *see also United States v. Anderson*, 384 F. Supp. 2d 32, 34 (D.D.C. 2005) (taking into consideration the indictment, "the briefs and other papers submitted by the parties, the proceedings before [the magistrate judge], the [magistrate's] findings of fact and conclusions of law, and the evidence and proffers before [the court]"). Based on the current record, the Court concludes that clear and convincing evidence supports a finding that no condition or combination of conditions will "reasonably assure" the "safety of any other person and the community." § 3142(e)(1). Accordingly, the Court orders that Defendant Richardson remain detained pending trial. *See* § 3142(e)(1).

Before addressing each of the § 3142(g) factors, the Court notes that Defendant Richardson's primary argument in support of pretrial release appears to be that the parties had an agreement that he would self-surrender (instead of being arrested at his home) in exchange for the Government's recommendation that he be released with conditions. *See, e.g.*, Def.'s Mot. ¶¶ 12, 14. The Government disputes this claim, indicating that it did not "promise any concession as to [Defendant] Richardson's release or bail conditions in exchange for his agreement to surrender; instead, the defendant's surrender was a courtesy offered to allow him some control over the timing of his arrest[.]" Gov.'s Opp'n at 12. Based on the present record, Defendant Richardson only agreed to surrender to the FBI *after* he was aware of a pending arrest warrant; he would have been arrested whether or not the parties had any "agreement" about his release conditions. Furthermore, Defendant Richardson cites no authority, nor provides any argument, in support of his request that the Court enforce any "bail arrangement" agreed upon by the parties prior to his arrest and interview with PSA. *See* Def.'s Mot. ¶ 45. Rather, the Court finds that the Government

appropriately took into consideration additional information in seeking pretrial detention, including additional details about the circumstances of Defendant Richardson's other pending criminal charges and his conduct during his interview with PSA.

### A.  Nature and Circumstances of the Offense Charged

Turning to the § 3142(g) factors, the Court first considers the "nature and circumstances of the offense charged" including "whether the offense is a crime of violence."  § 3142(g)(1).

Despite the "serious and chilling nature" of the events that took place at the U.S. Capitol on January 6, 2021, *Sabol*, 2021 WL 1405945, at *10, the D.C. Circuit has made clear that detention is not appropriate in all cases involving "Capitol Riot" defendants, *see Munchel*, 991 F.3d at 1284 ("In our view, those who actually assaulted police officers and broke through windows, doors, and barricades, and those who aided, conspired with, planned, or coordinated such actions, are in a different category of dangerousness than those who cheered on the violence or entered the Capitol after others cleared the way.").  Rather, the Court must consider the specific offenses with which Defendant Richardson is charged and the conduct underlying those offenses. *United States v. Chrestman*, Case No. 21-mj-218, 2021 WL 765662, at *7 (D.D.C. Feb. 26, 2021). In so doing, the Court must "adequately demonstrate[ ] that it considered whether [Defendant Richardson] pose[s] an articulable threat to the community in view of [his] conduct on January 6, and the particular circumstances of January 6." *Munchel*, 991 F.3d at 1283.

To aid in this consideration, Chief Judge Beryl A. Howell has articulated six "guideposts" for assessing "the comparative culpability of a given defendant in relation to fellow rioters": (1) whether the defendant has been charged with felony or misdemeanor offenses; (2) the extent of the defendant's prior planning, "for example, by obtaining weapons or tactical gear"; (3) whether the defendant used or carried a dangerous weapon; (4) evidence of coordination with other

protesters before, during, or after the riot; (5) whether the defendant played a leadership role in the events of January 6, 2021; and (6) the defendant's "words and movements during the riot"—*e.g.*, whether the defendant "remained only on the grounds surrounding the Capitol" or stormed into the Capitol interior, or whether the defendant "injured, attempted to injure, or threatened to injure others." *Chrestman*, 2021 WL 765662, at *7–8.

As with other courts in this jurisdiction, the Court finds these *Chrestman* guideposts persuasive for the purpose of differentiating among Capitol Riot defendants. *See, e.g.*, *United States v. DeGrave*, Criminal No. 21-0090 (PLF), 2021 WL 1940536, at *10 (D.D.C. May 14, 2021); *United States v. Whitton*, Crim. Action No. 21-35-5 (EGS), 2021 WL 1546931, at *7 (D.D.C. Apr. 20, 2021); *Sabol*, 2021 WL 1405945, at *10; *Klein*, 2021 WL 1377128, at *7; *United States v. Pezzola*, Criminal Action No. 21-52-1 (TJK), 2021 WL 1026125, at *6 (D.D.C. Mar. 16, 2021). Applied to Defendant Richardson's conduct on January 6, 2021, these "guideposts" weigh in favor of continued pretrial detention.

As to the first *Chrestman* factor, the Indictment charges Defendant Richardson with five felony offenses and two misdemeanor offenses. "Felony charges are by definition more serious than misdemeanor charges; the nature of a felony offense is therefore substantially more likely to weigh in favor of pretrial detention than the nature of a misdemeanor offense." *Chrestman*, 2021 WL 765662, at *7. In addition, § 3142(g)(1) specifically directs the Court to consider whether a defendant has been charged with a crime of violence, and at least one of the charged felonies— using a dangerous weapon while assaulting, resisting, or impeding certain officers, in violation of 18 U.S.C. § 111(a)(1) and (b), *see* Indictment, Count Two—is a crime of violence. *See Sabol*, 2021 WL 1405945, at *6–7; *Whitton*, 2021 Wl1546931, at *5. This offense carries a penalty of up to 20 years of imprisonment. § 111(b). Defendant Richardson is also charged with three felony

offenses under § 1752(a) (Counts Three, Four, and Five) while "us[ing] or carr[ying] a dangerous weapon," § 1752(b)(1), which carries a penalty of imprisonment for "not more than 10 years," § 1752(b)(1).   The gravity of these offenses   is undeniable, and weighs heavily in favor of continued pretrial detention

The second and third *Chrestman* factors—the extent of the defendant's prior planning, "for example, by obtaining weapons or tactical gear" and whether the defendant used or carried a dangerous weapon—is a closer call in this case, but also weighs in favor of pretrial detention. Evidence offered by the Government shows that Defendant Richardson was carrying a flagpole with him on the Capitol grounds.  He used this object to strike a law enforcement with sufficient force to break the pole.  Although there is no evidence on the record that he obtained "tactical gear," or otherwise engaged in prior planning, his forceful use of the flagpole to assault a police officer is alarming.

The Court also finds that the sixth *Chrestman* factor, the defendant's "words and movements" during the riot, weighs strongly in favor of pretrial detention, as they demonstrate that he acted "deliberately and dangerously."  *Whitton*, 2021 WL 1546931, at *8.  Specifically, Defendant Richardson indicated in his interview with FBI agents that, despite purportedly being pepper-sprayed by police officers, he did not retreat from the barricaded line of officers protecting the Capitol.  Instead, he became *more* aggressive and struck a police officer multiple times with a flagpole.  These actions show a blatant disrespect for the role of law enforcement and their efforts to maintain the safety of the Capitol and the lawmakers inside.  The photographic and video evidence of his assault of a police officer (who was in a barricaded line attempting to prevent the rioters from breaking into the Capitol) weigh in favor of detention.

As to the fourth *Chrestman* factor, there is no evidence on the present record that Defendant Richardson coordinated with other protesters before, during, or after the riot.

The fifth *Chrestman* factor considers whether the defendant played a leadership role in the events of January 6, 2021.  The evidence offered by the Government includes a video and photographs of Defendant Richardson at the front of a crowd confronting a line of police officers, suggesting that he was a leader in attempting to disperse the officers protecting the Capitol, in order to allow the rioters to breach the building.  *See* Gov.'s Opp'n at 4–5, 16.  However, it is a limited leadership role.

Considering these facts together, the Court concludes that the "nature and circumstances" of the offenses for which Defendant Richardson is charged demonstrate a disregard for the law and a willingness to act violently—including against law enforcement officers.  Accordingly, the first factor of 18 U.S.C. § 3142(g) weighs heavily in favor of detention on the basis that no condition or combination of conditions will reasonably assure the safety of the community.  18 U.S.C. §§ 3142(e)(1), 3142(g)(1).  Additionally, in view of "the substantial term of imprisonment" to which Defendant Richardson is exposed for his offenses, this factor also weighs in favor of his continued pretrial detention, on the basis that no condition or combination of conditions will reasonably assure Defendant Richardson's appearance as required.  *Sabol*, 2021 WL 1405945, at *13 (citing 18 U.S.C. §§ 3142(e)(1), 3142(g)(1)); *see also United States v. Chansley*, Case No. 21-cr-3 (RCL), 2021 WL 861079, at *14 (D.D.C. Mar. 8, 2021))

**B.  Weight of the Evidence**

The weight of the evidence against Defendant Richardson also favors continued pretrial detention.  § 3142(g)(2).  The BWC video and photographs provided by the Government depict Defendant Richardson striking an MPD officer with a flagpole three times—using enough force

to break the pole.  *See supra* Section I(A).  Contrary to Defendant Richardson's claim that he did not make contact with any police officer, *see* Def.'s Mot. ¶ 5, the MPD officer recalled being struck by the flagpole.   Gov.'s Opp'n at 6; *see, e.g.*, *United States v. Cua*, Criminal Action No. 21-107 (RDM), 2021 WL 918255, at *4 (D.D.C. Mar. 10, 2021) (concluding that the second factor weighs in favor of detention based on the government's "video and photographic evidence").

Moreover, Defendant Richardson *admitted* to the FBI that he swung his flagpole at a police officer.  Gov.'s Opp'n at 8.  Although he contends that he only did so in response to being "hit" first, the BWC video belies this assertion.  Defendant Richardson approached the metal barricade from behind other "protesters" and immediately began striking the officer *before* the officer swung his baton in Defendant Richardson's direction.  *See supra* Section I(A).  And the officer's baton did *not* make any contact with Defendant Richardson; he was not "hit" as he claims.

In light of the strength of the Government's evidence against Defendant Richardson, the second factor weighs against granting his request for release, on the basis that no condition or combination of conditions will reasonably assure the safety of the community and the appearance of the defendant.

### C.  History and Characteristics of the Defendant

Under the third section 3142(g) factor, the Court must consider Defendant Richardson's "history and characteristics," including his "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings," and "whether, at the time of the current offense or arrest, [the defendant] was on probation, on parole, or on other release."   § 3142(g)(3).  The Court has considered the information presented by both parties, and concludes that Defendant Richardson 's

history and characteristics indicate that no condition or combination of conditions would reasonably assure the safety of the community.

During the detention hearing, Defense counsel noted that Defendant Richardson is 71 years old, has no prior criminal convictions, has a "steady address" and a "longtime girlfriend," and that he has "always been gainfully employed" by running his own business.  Hr'g Tr. at 9:19–10:4.  He owns and operates a small pest control company, which he seeks to sell to fund his retirement.  Def.'s Mot. ¶¶ 40(f), (g).  Defendant Richardson served in the United States Army for three years, and was honorably discharged.  *Id.* ¶ 40(c).  He cites the fact that he "complied" with the "request of law enforcement officials" to "surrender promptly" as an example of his willingness to comply with court-ordered conditions of release.  *Id.* ¶ 41.

The Government contends that Defendant Richardson's recent criminal history evidences "violent, threatening, and erratic conduct," and a pattern of "minimizing and lying about his own misconduct"—both of which weight in favor of pretrial detention.  Gov.'s Opp'n at 18.  The Government argues that his conduct on January 6, 2021 is part of a pattern of escalating aggressive and violent actions.  *Id.*  For example, he allegedly assaulted the motorcyclist—causing that person to suffer significant injuries—while he was on pretrial release for charges arising from a traffic stop in which he lied to a police officer about being armed.  That incident, in turn, occurred after his concealed carry permit was revoked—due to an earlier incident in which he brandished his weapon during an argument at a gas station.  *See supra* Section I(C).  The Court agrees that these facts—together with his conduct on January 6, 2021—demonstrate a pattern of violent and aggressive behavior, such that Defendant Richardson's release would threaten the safety of the community if he were released pending trial.

Moreover, the Government notes that Defendant Richardson has a history of lying to law enforcement and court officers and of ignoring the law.  He purportedly carried a "loaded and concealed firearm after his license to carry was revoked."  Gov.'s Opp'n at 18.  He later allegedly lied to a police officer during a traffic stop, falsely stating that he was not armed when he actually was (despite the revocation of his concealed carry permit).  And, in this case, Defendant Richardson made statements to FBI agents that did *not* align with the BWC videos—including by claiming that he was provoked to hit an officer.  Gov.'s Opp'n at 19.  He also made false statements to or refused to answer certain questions by PSA.  *See supra* Section I(B).

Each of these examples vitiates the credibility of Defendant Richardson that he would comply with any release conditions set by the Court.  He has demonstrated his character for dishonesty to court officers and displayed an utter disregard for the rule of law and for the authority of law enforcement officers.  His history is even more concerning in light of his actions on January 6, 2021 and his "extreme disregard" for the safety of law enforcement officers, evidenced by the video provided by the Government and by Defendant Richardson's own admissions.  As Magistrate Judge Rice aptly summarized: "Such a pattern of violence in three separate and unrelated incidents establishes that defendant presents a serious threat to the safety of community.  His violent assault on police and unlawful attempt to interfere with a session of Congress establishes an inability to comply with the law and any conditions of supervision[.]"  Pretrial Det. Order at 1.

The Court finds the third § 3142(g) factor weighs against pretrial release on the basis that no condition or combination of conditions will reasonably assure the safety of the community and the appearance of the defendant.

**D.  The Nature and Seriousness of the Danger Posed by Defendant's Release**

The final factor that the Court must consider is "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." § 3142(g)(4). "Consideration of this factor encompasses much of the analysis set forth above, but it is broader in scope," as it requires the Court to engage in an "open-ended assessment of the 'seriousness' of the risk to public safety." *Cua*, 2021 WL 918255, at *5 (quoting *United States v. Taylor*, 289 F. Supp. 3d 55, 70 (D.D.C. 2018)).  "Because this factor substantially overlaps with the ultimate question whether any conditions of release 'will reasonably assure . . . the safety of any other person and the community,' 18 U.S.C. § 3142(e), it bears heavily on the Court's analysis." *Whitton*, 2021 WL 1546931, at *11 (quoting *Cua*, 2021 WL 918255, at *5).

As the D.C. Circuit recently explained in *Munchel*, the threat that an individual poses to the community must "be considered in context" and "whether a defendant poses a particular threat depends on the nature of the threat identified and the resources and capabilities of the defendant."  991 F.3d at 1283. Accordingly, to the extent the Court's determination of the defendant's dangerousness relies on past political violence, the court must consider whether "the specific circumstances that made it possible" for that violence to arise are likely to manifest themselves again.  *Id.* at 1284.  This, in turn, requires the Court to consider whether the risk that a defendant poses can be mitigated by supervisory conditions, such as home detention or the presence of a third-party custodian.  *See Klein*, 2021 WL 1377128, at *13.

As discussed above, Defendant Richardson's conduct on January 6, 2021 and in unrelated altercations evinces a clear disregard for the safety of others—and for law enforcement officers in particular.  *See, e.g.*, *Fairlamb*, 2021 WL 1614821, at *8 ("[T]he defendant's willingness to assault a police officer on January 6—in the full view of other officers, scores of bystanders, and many

cameras—confirms that, when enraged, he poses a danger to the community."). The BWC video shows Defendant Richardson at the front of a crowd, directly confronting a line of police officers. *See supra* Section I(A).  Defendant Richardson's violent actions against a police officer and his propensity to lie are deeply troubling, and plainly weigh in favor of the Court finding that he poses a serious danger to his community which could not be mitigated by release conditions.  *See Fairlamb*, 2021 WL 1614821, at *5 ("[I]f any crime establishes danger to the community and a disregard for the rule of law, assaulting a riot-clad police officer does."); *Chrestman*, 2021 WL 765662, at * 8 ("Grave concerns are implicated if a defendant actively threatened or confronted federal officials or law enforcement" because such conduct demonstrates "disregard for the institutions of government and the rule of law[.]").

Consistent with other courts in this jurisdiction, the Court is unpersuaded by any argument that he does not present prospective danger to the community because the precise circumstances of January 6, 2021 may not recur.  *See, e.g.*, *Sabol*, 2021 WL 1405945, at *18 ("While the circumstances of January 6, 2021 were unique, and the day has passed, it cannot be said that every Capitol Riot defendant is no longer a danger because those exact circumstances are unlikely to arise again.").  As the court articulated in *Whitton*, "even if the exact circumstances of the January 6 attacks are not 'continuing in nature' or 'likely to be repeated in the future,' the violent offenses [the defendant] committed that day are serious enough on their own to militate against pretrial release under this first Section 3142(g) factor." 2021 WL 1546931, at *9.  The same is true as to Defendant Richardson.  *See Munchel*, 991 F.2d at 1284 (observing that Capitol Riot defendants who acted violently are in a different category of dangerousness than those who did not do so).

Moreover, since his participation in the events at the Capitol on January 6, 2021, Defendant Richardson has been charged with committing a violent assault against a motorcyclist, which

allegedly resulted in serious injuries to the victim.  He has not been deterred by other pending criminal matters from allegedly engaging in further aggressive and violent behavior.  Accordingly, the Court finds that releasing him from detention would pose a serious risk to public safety, which could not be mitigated by release conditions.

In consideration of § 3142(g), and noting the D.C. Circuit's observation that "[i]t cannot be gainsaid that the violent breach of the [U.S.] Capitol on January 6 was a grave danger to our democracy, and that those who participated could rightly be subject to detention to safeguard the community," *Munchel*, 991 F.3d 1273, the Court is persuaded that Defendant Richardson poses a danger to the community if he were to be released pending trial, and he "cannot be trusted to abide by any conditions of release that might be imposed instead of pretrial detention." *Chrestman*, 2021 WL 765662, at *16.

## IV.    CONCLUSION

For the foregoing reasons, upon careful consideration of Defendant Richardson's motion for bail and the Government's opposition, the evidence proffered by both parties, the entire record, and the factors set forth in 18 U.S.C. § 3142(g), the Court finds that all four statutory factors favor continued pretrial detention.  The Government has met its burden of establishing, by clear and convincing evidence, that no condition or combination of conditions can be imposed that would reasonably assure the safety of the community if Defendant Richardson were released pending trial.  18 U.S.C. § 3142(e)(1).  The Court will therefore **DENY** Defendant Richardson's motion. An appropriate Order accompanies this Memorandum Opinion.

**Dated:** January 27, 2022

　　　　　　　　　　　　　　　　/s/　　　　　　　　　　　　　　　
COLLEEN KOLLAR-KOTELLY
United States District Judge