UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>HOWARD CHARLES RICHARDSON,<br>Defendant. | Case No. 21-cr-0721 (CKK) |

## MEMORANDUM OPINION AND ORDER

(April 4, 2024)

Pending before this Court is Defendant Howard Richardson's [44] letter requesting compassionate release, which this Court construes as a Motion for Compassionate Release ("Def.'s Mot.").[1] Defendant Howard Richardson ("Defendant" or "Mr. Richardson") entered a plea of guilty to one count of Assaulting, Resisting, or Impeding Certain Officers, in connection with his participation in the January 6, 2021 riot at the United States Capitol (building and grounds). Defendant is currently serving a sentence of 46-months of incarceration, and with credit for time served, and he has served approximately 28 months. Defendant requests that this Court grant him compassionate release, based solely on his allegation that his longtime partner/companion has had to handle Defendant's pest-control business while he has been incarcerated – and this is in addition to running her own massage therapy business and helping with her daughter's 3-year-old child. Def.'s Mot., ECF No. 44, at 1. Because Defendant's motion does not meet the standards for compassionate release, this Court did not set a date for the Government to respond. For the reasons explained herein, Defendant's [44] Motion for Compassionate Release is DENIED.

---

[1] The letter was filed under seal by this Court because it contained personal information about a non-party. This Memorandum Opinion and Order is not sealed.

1

I. Legal Standard

While federal courts are generally forbidden to modify a term of imprisonment that has been imposed, *see United States v. Smith*, 467 F.3d 785, 788 (D.C. Cir. 2006) (noting "that Congress has, in language with a somewhat jurisdictional flavor, limited district court authority to *modify* sentences"), this "rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One of those exceptions is embodied in 18 U.S.C. §3582(c)(1)(A), as amended by the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018), which authorizes federal courts to entertain a motion for sentence reduction brought by the Director of the Bureau of Prisons ("BOP") or a defendant. Accordingly, federal courts may, in certain circumstances, grant a defendant's motion to reduce his or her term of imprisonment. Namely, such motion requires that the "defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A). This exhaustion requirement has however been deemed non-jurisdictional, and a court may excuse such failure "where, among other things, the agency will almost certainly deny any relief either because it has a preconceived position on, or lacks jurisdiction over, the matter." *United States v. Johnson*, 464 F. Supp. 3d 22, 29 (D.D.C. 2020).

Even if the defendant satisfies the exhaustion requirement (or the court finds that it would be futile), the defendant must demonstrate also that he meets the statute's eligibility criteria: (1) that "extraordinary and compelling reason[s]" warrant such a reduction; and (2) such reduction would not interfere with the purposes of punishment set forth in Section 3553(a), considering the factors set forth in section 3553(a) to the extent that they are applicable," 18 U.S.C. § 3582(c)(1)(A).

2

II. Discussion

Setting aside the exhaustion requirement as futile, this Court finds that Mr. Richardson fails to qualify for compassionate release because he has neither shown an extraordinary and compelling reason for compassionate release nor do the Section 3553(a) factors weigh in favor of his release. These two contentions will be addressed in turn.

A. Extraordinary and Compelling Reason

Defendant's Motion alleges a single ground for his request for compassionate release – that his longtime companion is overworked because she is not only running her own business and helping with her grandchild but handling his business as well, while he is incarcerated. Congress does not specify what counts as "extraordinary and compelling reason[s]," *see* 18 U.S.C. §3582(c)(1)(A)(i), but instead expressly delegated to the Sentencing Commission the authority to define the circumstances that would satisfy that standard. The Sentencing Commission has identified four general categories that qualify as such, including defendant's age (plus deteriorating condition and having served 75% of the prison term), medical issues, family circumstances or "other" exceptional situations (similar in gravity). *See* Sentencing Guidelines Manual Section 1B1.13.

Defendant does not allege that he has any medical issues, nor does he meet the requirements of the "age" category. Furthermore, the "family circumstances" category is inapplicable here as it involves the death or incapacity of a caregiver of defendant's minor child; or incapacitation of defendant's spouse, partner, or parent, all with the effect that defendant would have to act as a caregiver. Nor does the "other" category – requiring circumstances similar in gravity to the other categories – apply to Defendant's allegations that his long-term partner is carrying a heavier workload and more stress because of his incarceration.[2]

---

[2] The Court notes that the consequences of Defendant's actions could have been anticipated;

3

Accordingly, Defendant does not demonstrate an extraordinary and compelling reason for compassionate release.

B. Consideration of Factors in 18 U.S.C. Section 3553(a)

Even if there was an extraordinary and compelling reason to reduce Defendant's term of imprisonment, the Court must reassess the sentencing factors that Congress established at 18 U.S.C. Section 3553(a), to the extent applicable, including the need for the sentence imposed "to reflect the seriousness of the offense" and "afford adequate deterrence" and "to protect the public from further crimes of the defendant." 18 U.S.C. Section 3553(a)(2)(A)-(C).[3] Any reduction must likewise be consistent with the Sentencing Commission's expressed policy concern about the release of dangerous offenders. *See* U.S.S.G. Section 1B1.13(2) (stating that, before granting a motion for compassionate release, courts should make a finding that "the defendant is not a danger to the safety of any other person or to the community"); *see also United States v. Holroyd*, 464 F. Supp. 3d 14, 19 (D.D.C. 2020) ("If a defendant still poses a danger to the community or if the balance of factors under § 3553(a) favor continued imprisonment, these are independent reasons to deny a motion for compassionate release.")

During the sentencing hearing, the Court looked at the history and characteristics of this Defendant. Mr. Richardson served in the armed forces for approximately four years; self-reported a good relationship with his three adult children (one of whom is a police officer); has a stable

---

nevertheless, the Court finds it unfortunate that a non-party now bears those consequences. This does not however rise to the level of an extraordinary and compelling reason for Defendant's early release.

[3] The Section 3553(a) factors include "the nature and circumstances of the offense;" "the history and characteristics of the defendant," and also the need for a sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," "to afford adequate deterrence to criminal conduct," "to protect the public from further crimes of the defendant," and "to provide the defendant with needed educational or vocational training, medical care, and other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a).

4

home and family life with a long-time partner; and he owns his own pest control business. PreSentence Investigation Report, ECF No. 32, at 12-13. Defendant had no prior convictions but did have pending charges for carrying a firearm without a license and driving with either a suspended or revoked license. Sentencing Transcript, ECF No. 40, at 31-32. Defendant had been charged also with aggravated assault causing serious bodily injury, stemming from pushing a motorcyclist off a motorcycle. *Id.* at 32-33. The Court notes that all of Defendant's charges occurred after Defendant had turned 70 years of age, *id.* at 18-19, and accordingly, Defendant's history and characteristics do not weigh in favor of early release.[4]

The Court looks next at the nature and circumstances of the offense, as well as the need to promote respect for the law and provide just punishment. In this case, Defendant traveled from his home in Pennsylvania, "ostensibly to attend a rally in support of then-President Trump and to protest Congress's certification of the Electoral College." *Id.* at 38. This Court noted that:

> He made his way to the restricted area of the U.S. Capitol grounds. He passed by metal barriers and police offices attempting to keep the crowd away from the building.
>
> For several minutes he stood among the crowd and waved a blue and white . . . flag, it appears that it was a Trump flag. He then made his way to the edge of the crowd towards the U.S. Capitol Building and approached the line of officers and a set of metal barricades.
>
> At about 1:38, the defendant was standing several feet away from the police line holding his flagpole. So he was in the front line. There were barriers. He then raised the flagpole and forcefully swung it down to strike a police officer standing behind the metal barricade. The defendant's flagpole made contact with the officer. Defendant raised the flagpole again and forcefully swung it down striking the officer a second time. Defendant struck the officer a third time, but the force was enough to break the flagpole.
>
> Defendant retreated from the police line after someone deployed pepper spray or tear gas, and he backed away to shield his eyes. It was evidently pepper spray.

Sentencing Transcript, ECF No. 40, at 39. Accordingly, Defendant's offense involved more than merely entering the Capitol grounds and building, and he ultimately agreed that he struck a police

---

[4] Defendant was 72 years old at the time of sentencing.

officer three times. *Id.* at 40. The Court notes that Defendant misrepresented to the FBI that the police officer struck him first. *Id.* at 41. Moreover, the video evidence showed that after he struck the office, he can be seen pushing a metal-edged billboard (that others lifted) towards the police officers. *Id.* at 40-41, 44. The Court commented that Defendant "c[a]me up with excuses both at the plea and in the [FBI] interview" before he ultimately "agreed that he struck at the police officer three times," and that this "is a serious offense." *Id.* at 42. Defendant was sentenced to 46 months of incarceration, which is at "the high-end of the sentencing guideline range as calculated by the parties in the plea agreement." Govt. Sentencing Mem., ECF No. 35, at 1. Defendant did receive credit for time served, as he had been ordered detained after his arrest and was continued as committed prior to sentencing.

Reviewing the entire record in this case, this Court finds that the sentencing factors set forth in 18 U.S.C. Section 3553(a) – specifically, the nature of the offense and the need for a sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense" – do not weigh in favor of Defendant's requested early release from incarceration. Accordingly, because Defendant has neither demonstrated extraordinary and compelling circumstances warranting his early release nor do the Section 3553(a) factors weigh in favor of early release, it is this 4th day of April 2024,

ORDERED that Defendant's [44] Motion for Compassionate Release be and hereby is DENIED.

*Colleen Kollar-Kotelly*
COLLEEN KOLLAR-KOTELLY
UNITED STATES DISTRICT JUDGE